IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KING AEROSPACE COMMERCIAL CORPORATION, INC.,** | § § § | |
| Plaintiff/Counterclaim Defendant, | § § | Civil Action No. **3:08-CV-0999-L** |
| v. | § § | |
| **AL-ANWA AVIATION, INC., a/k/a AL-ANWA TRADING AND CONTRACTING ESTABLISHMENT**, | § § § § | |
| Defendant/Counterclaim and Third-Party Plaintiff, | § § § | |
| v. | § § | |
| **SIMAT, HELLIESEN & EICHNER, INC., a/k/a SH&E, INC.,** | § § § | |
| Third-Party Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING TEMPORARY RESTRAINING ORDER**

Before the court is Emergency Motion of Al-Anwa Aviation, Inc. a/k/a Al-Anwa Trading and Contracting Establishment, for a Temporary Restraining Order and Preliminary Injunction, filed June 25, 2008. After carefully considering the motion, response, reply,[1] record, and applicable law, the court **grants** Emergency Motion of Al-Anwa Aviation, Inc. a/k/a Al-Anwa Trading and Contracting Establishment, for a Temporary Restraining Order.

---

[1] On July 5, 2008, counsel for Al-Anwa filed a letter to the court explaining that the appendix filed in support of its reply was filed twenty-seven minutes after its deadline due to technical problems. The court **deems** the appendix **timely filed**.

I. **Factual and Procedural Background**

Plaintiff and Counterclaim Defendant King Aerospace Commercial Corporation, Inc. ("KACC") filed its Original Petition in the 116th Judicial District Court, Dallas County, Texas on May 23, 2008. KACC brought this action against Defendant and Counterclaim and Third-Party Plaintiff Al-Anwa Aviation, Inc. a/k/a Al-Anwa Trading and Contracting Establishment ("Al-Anwa") alleging claims of breach of contract, quantum meruit, and unjust enrichment. Al-Anwa removed the case to this court on June 13, 2008, and on June 20, 2008, it filed counterclaims and a third-party complaint against KACC and Third-Party Defendant Simat, Helliesen & Eichner, Inc. a/k/a SH&E, Inc. ("SH&E"). Against SH&E, Al-Anwa asserts claims of breach of contract, breach of the implied duty of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, negligence, gross negligence, and negligent misrepresentation. Al-Anwa has brought claims of breach of contract, unjust enrichment, and conversion against KACC, and it seeks a declaratory judgment and injunctive relief. Al-Anwa further pleads theories of vicarious liability against KACC, including aiding and abetting and civil conspiracy with SH&E.

The dispute grows out of two contracts between KACC and Al-Anwa regarding the refurbishment of an aircraft, Lockheed Model L1011-500, Serial Number 1247, ICAO Registration Number HZ-AB1 (the "Aircraft"). Al-Anwa alleges that it began negotiating with SH&E in the summer of 2007 regarding its desire to refurbish the interior of the Aircraft and that ultimately SH&E negotiated a contract with KACC on Al-Anwa's behalf.[2]

---

[2] Al-Anwa cites extensively to its counterclaim and third-party complaint in support of the factual background section of its brief. Its counterclaim and third-party complaint is not a verified document, and thus the court does not rely on these unverified allegations in determining this motion. Much of the background involving SH&E is irrelevant to the motion because Al-Anwa seeks injunctive relief against KACC only.

Al-Anwa and KACC signed a contract dated November 15, 2007 relating to the removal of the interior of the Aircraft (the "Interior Removal Contract"). Al-Anwa agreed to pay $408,750 for services specified in the Interior Removal Contract. Al-Anwa paid the contract price to KACC. The parties signed a second contract on December 13, 2007, a Commercial Corporation Aircraft Interior Modification Agreement (the "CCAIMA"). This contract, which called for additional work on the interior of the Aircraft, had a contract price of $11,700,000. The payment schedule requires the following: 10% of the base price to be paid upon execution of the agreement; 20% of the base price to be paid on or before the date the Aircraft was delivered to KACC; 20% of the base price to be paid upon removal of the aircraft interior; 10% of the base price to be paid upon completion of the gallery prep; 10% of the base price to be paid upon beginning cabin and component reinstallation; 10% of the base price to be paid upon completion of the gallery reinstallation; 10% of the base price to be paid upon interior reinstallation phase, and the remaining balance to be due upon the completion date. Al-Anwa paid 10% on or about December 16, 2007, and paid an additional 20% on or about January 26, 2008 after the Aircraft was delivered to KACC. Accordingly, Al-Anwa has now paid KACC $3,510,000, or 30% of the base price.

The parties hotly contest what happened next, who is to blame for various delays, and which party had the responsibility to produce certain documents. On February 11, 2008, KACC sent a letter to Al-Anwa stating that Al-Anwa was in breach of the CCAIMA for failure to provide certain documents to KACC and demanding payment of $42,750 per day for each day it did not receive the documents. On March 5, 2008, KACC sent an invoice to Al-Anwa requesting payment of the third installment of the contract, or 20% of the base price for completion of removal of the aircraft interior.

On May 7, 2008, KACC notified Al-Anwa that it had failed to deliver 20% of the base price to KACC, demanding payment within five days and stating that KACC had a lien on the Aircraft and intended to foreclose. On May 30, 2008, KACC notified Al-Anwa that it claimed a lien against the Aircraft pursuant to an Oklahoma statute and posted a notice that a public sale of the Aircraft would be held June 10, 2008. On June 2, 2008, KACC re-noticed its lien and reset the sale for June 16, 2008. A few days later, KACC withdrew the Oklahoma lien and notified Al-Anwa that it claimed a lien against the Aircraft under Texas law. On June 20, 2008, KACC told Al-Anwa it was going to foreclose upon the lien and set a public sale for July 10, 2008.

Al-Anwa notified KACC on June 2, 2008 that it invoked section 3.22(b) of the CCAIMA. Al-Anwa demanded the return of the Aircraft and stated that it was prepared to deposit the disputed 20% of the base price into an agreed-upon escrow account. On June 18, 2008, Al-Anwa notified KACC that the 20% (or $2.34 million) had been deposited into an escrow account at the law firm of Husch Blackwell Sanders LLP. In response, KACC stated that Al-Anwa owed it $12,691,795.32, or the entire balance due of the CCAIMA, consequential damages beginning February 14, 2008, interest, and attorney's fees. KACC stated that it would not return the Aircraft until this amount was placed in escrow, as well as an additional $149,800 it contends is the cost of delivering parts of the Aircraft to Al-Anwa. KACC also demanded that Al-Anwa place this money in an escrow account at Aero-Space Reports, and on June 24, 2008, counsel for Al-Anwa stated they would set up the account through that entity.

The next day, Al-Anwa filed this motion for a temporary restraining order and preliminary injunction. Al-Anwa asks the court to enjoin KACC from selling the Aircraft at the public sale set for July 10, 2008 and to order KACC to return the Aircraft to Al-Anwa.

## II. Legal Standard

The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Any temporary restraining order, therefore, is a temporary measure to protect rights until a hearing can be held.

There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction. To prevail, a plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

## III. Analysis

Al-Anwa argues that each of the four prerequisites for the issuance of a temporary restraining order or preliminary injunction has been met, and it is entitled to an order enjoining the July 10, 2008 public sale of the Aircraft and requiring KACC to return the Aircraft. KACC contends that Al-Anwa is not entitled to the relief sought and that it has a valid lien on the Aircraft.

### A. Likelihood of Success on the Merits

Al-Anwa argues primarily that it is likely to succeed on the merits on its counterclaim against KACC for breach of contract, but also notes that it is likely to succeed on its claims for unjust enrichment, conversion, aiding and abetting, and civil conspiracy. It contends that pursuant to both section 3.22(b) of the CCAIMA and Texas law, KACC must return the Aircraft to Al-Anwa because it has placed sufficient funds in an escrow account. Al-Anwa also argues that the Texas lien KACC placed on the Aircraft is invalid.

KACC responds that Al-Anwa does not need an injunction because section 3.22(b) of the CCAIMA governs the dispute and Al-Anwa must simply comply with the contract. KACC also contends that the lien is valid and enforceable.

Section 3.22(b) of the CCAIMA provides:

> If KACC is the party allegedly breaching, Owner [Al-Anwa] may cause KACC, upon the written demand of Owner to return promptly, and KACC shall return promptly, the Aircraft, **including without limitation any parts, systems, accessories or equipment (including all records, maintenance manuals, logbooks or other documentation) associated with the Aircraft**, as Owner may so demand, to Owner or Owner's Representative, at the Facility as long as all funds owed to KACC have been paid. If Owner disputes that any such sums are owed to KACC, KACC shall not be required to relinquish possession of the Aircraft until full payment for all undisputed Work is paid to KACC by Owner and a sum of money equal to the sums disputed by Owner ("Disputed Sums") are deposited into escrow as described below ("Dispute Fund").
>
> **Such escrow arrangement will (i) not permit or require the release of funds to KACC or return any funds to Owner unless and until the disputes are finally settled or tried to a final decision in a court of law. The escrow agent shall be a national bank's trust department or an independent and reputable aviation escrow service to which the parties agree in writing. Owner will fund the escrow with the Dispute Fund upon negotiation in good faith of an escrow agreement among the**

> **parties and an escrow agent. The parties shall use diligent good faith efforts to resolve all disputes, if any, on or before the funds are escrowed. The parties shall equally divide the cost of the escrow agent and escrow as part of any settlement. Provided that Section 3.22(b) is complied with, KACC agrees to waive and relinquish whatever rights it has, at law or otherwise, to assert any special, laborers', workmen's, mechanics', materialmen's, artisans, or any other lien against the Aircraft or any parts, systems, accessories or equipment (including an[y] records, maintenance manuals, logbooks or other documentation) associated with the Aircraft for any part of the Work performed or any work performed pursuant to an A[dditional] W[ork] R[equest].**

McGuire Aff. Ex. A § 3.22(b) (emphasis in original).

Al-Anwa contends that section 3.22(b) has been fully complied with because it has placed 20% of the base price, or $2.34 million, in an escrow account. It argues that the lien on the Aircraft, made pursuant to Texas Property Code § 70.301 *et seq.*, states that the amount due is "in excess of $2,340,000.00," and describes as extortion KACC's demand that Al-Anwa place more than $12 million in escrow to secure return of the Aircraft.

KACC does not dispute the procedure available in section 3.22(b), but argues that Al-Anwa has failed to comply with it by its refusal to place more than $12 million in escrow. KACC contends that the phrase "Disputed Sums" includes all amounts in dispute between the parties, and should include not just the $2.34 million it demanded and set forth in the lien, but the entire balance due of the CCAIMA because Al-Anwa has breached the contract, consequential damages in the amount of $42,750 per day since February 14, 2008, interest on the actual and consequential damages, and attorney's fees. KACC also contends that Al-Anwa has failed to comply with the CCAIMA because it has not placed an amount in the specific type of escrow account identified in section 3.22(b).

In reply, Al-Anwa argues that KACC's interpretation of "Disputed Sums" is incorrect and that section 3.22(b) must be read with section 3.4 of the CCAIMA. Al-Anwa argues that the two sections read together limit KACC to receiving payment for completed work, and only allow additional damages, including costs and attorney's fees, if the Aircraft is actually sold pursuant to foreclose of a mechanic's lien. It also notes that KACC has provided no evidence of these additional damages, and that KACC has already received 30% of the base price of the CCAIMA despite the fact that no work on the Aircraft has been completed pursuant to the CCAIMA.

Section 3.4(a) provides:

> Mechanics' Liens: KACC shall not be required to relinquish possession of the Aircraft until full payment for all Work is received by KACC unless a dispute fund is established pursuant to Section 3.22(b) below. Subject to section 3.22(b) below, KACC shall have a mechanic's lien on the Aircraft which may be foreclosed upon if Owner fails to pay for all Work or other services rendered to or for it by KACC. Additionally, if provided by applicable law, KACC shall have the right to sell the Aircraft at a public or private sale and recover from such sale all sums owed KACC and any and all costs associated with such sale including KACC's attorney's fees and other collection costs and expenses.

McGuire Aff. Ex. A § 3.4(a).

KACC also points out that Al-Anwa failed to place the $2.34 million in an escrow account as identified in section 3.22(b), because it has placed the money in an attorney trust fund, not a "national bank's trust department or an independent and reputable aviation escrow service to which the parties agree in writing." *Id*. at § 3.22(b). Al-Anwa responds that it represented that it was willing to place the funds into an "agreed upon escrow account" on June 2, 2008, and that as of June 24, 2008, it was "agreeable to establishing" an escrow account with KACC's suggested account,

Aero-Space Reports, and "stands ready to take all necessary and appropriate steps to that end." McGuire Aff. Exs. H, L.

The court has reviewed the CCAIMA and the evidence submitted by the parties and concludes that Al-Anwa has effectively complied with section 3.22(b) and is likely to succeed on its breach of contract claim insofar as it argues that KACC is required to return the Aircraft. Reading sections 3.4(a) and 3.22(b) of the CCAIMA together, the court determines that KACC's interpretation of the term "Disputed Sums" is too far-reaching given that it seeks to include damages that are only available to it upon sale of the Aircraft. The amount included in the lien and the invoices sent to Al-Anwa prior to its invocation of section 3.22(b) was 20% of the base price, or $2.34 million, the amount Al-Anwa has already placed in escrow. KACC did not seek the additional $10 million until after Al-Anwa demanded the return of the Aircraft. Moreover, KACC fails to present any evidence of its attorney's fees, the claimed $42,750 per day in consequential damages, or the costs it claims it would incur by returning the Aircraft to Al-Anwa. KACC has also failed to point to any evidence or specific provision of the CCAIMA that would require Al-Anwa to pay the balance due on the contract.

The court concludes that a reasonable interpretation of the CCAIMA requires Al-Anwa only to place $2.34 million in escrow, the amount listed on the mechanic's lien filed by KACC, and the amount included in KACC's May 7, 2008 demand letter to Al-Anwa. The additional funds sought by KACC are not supported by evidence before the court and appear to be an attempt by KACC to force the sale of the Aircraft. To hold that Al-Anwa has not complied with section 3.22(b) because of the escrow account issue would exalt form over substance.

As Al-Anwa has effectively complied with section 3.22(b) of the CCAIMA, the court does not reach the arguments regarding the validity of the statutory lien because KACC has waived its right to pursue such a lien. The CCAIMA states:

> Provided that Section 3.22(b) is complied with, KACC agrees to waive and relinquish whatever rights it has, at law or otherwise, to assert any special, laborers', workmen's, mechanics', materialmen's, artisans, or any other lien against the Aircraft . . . for any part of the Work performed or any work performed pursuant to an A[dditional] W[ork] R[equest].

McGuire Aff. Ex. A § 3.22(b). Because the court has determined that Al-Anwa has effectively complied with section 3.22(b), KACC is not entitled to any lien against the Aircraft and the statutory lien is invalid. Accordingly, the court determines that Al-Anwa has established the substantial likelihood of success on its breach of contract claim.

### B. Threat of Immediate and Irreparable Harm

Al-Anwa argues that the sale of the Aircraft would present an immediate and irreparable harm to it because the Aircraft has special sentimental value to its principal, because only 250 of the model were produced and only fifteen are still in active use, and because the Aircraft has already had its interior removed and is ready for refurbishment. KACC states in passing that Al-Anwa will not be harmed because it "can easily obtain a comparable aircraft." KACC Resp. 11 ¶ 29.

The court determines that Al-Anwa has demonstrated immediate and irreparable harm. It has provided evidence supporting its claim that this particular plane is irreplaceable both because of its sentimental value and the scarcity of similar planes. *See Consolidated Restaurant Ops., Inc. v. National Processing Co.*, 2002 WL 1432469, *6 (N.D. Tex. Jun. 28, 2002) (citing *Our Company, Inc. v. Eagle Snacks, Inc.*, 812 F. Supp. 6, 7 (D. Me. 1993) ("Where a party seeking prejudgment injunctive relief asserts claims that, in essence, are capable of being addressed by an award of

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 10**

monetary damages, it cannot be said that there is irreparable injury unless it is shown that there is some unique category of loss not capable of being addressed on existing legal theories by an award of damages.")); *see also Deemer v. Bontz*, Civil Action No. 4:07-CV-0380-Y (June 29, 2007). Accordingly, the second required element for a temporary restraining order or preliminary injunction has been satisfied.

### C. Harm to Al-Anwa versus Harm to KACC

The court also determines that greater injury will result from denying the temporary restraining order than from granting it. *Clark*, 812 F.2d at 993. Al-Anwa argues that the loss of the Aircraft will be an irreparable harm to it, while it has placed the disputed amount of $2.34 million in escrow to protect KACC's right to these funds. KACC responds that the threatened injury to Al-Anwa "outweighs any damages KACC might be caused by the injunction only if the proper escrow amount and account are used." KACC Resp. 11 ¶ 29. The court has already concluded that Al-Anwa can comply with section 3.22(b) by placing $2.34 million in escrow. KACC has failed to explain how a temporary restraining order would harm it, and it has failed to provide evidence substantiating the additional damages it seeks to have put into escrow. Accordingly, the court determines that the third requirement has also been met.

### D. The Public Interest

Finally, the court determines that granting a temporary restraining order does not disserve the public interest. Al-Anwa argues that the burden is on KACC to show than an injunction would harm the public and that the public interest would be served by preventing the sale and conversion of the Aircraft by KACC. KACC does not address the public interest.

The burden of persuasion on this element lies with Al-Anwa, not KACC. *PCI Transp., Inc. v. Fort Worth & Western R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (quoting *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 195 (5th Cir. 2003)). The court, however, determines that granting a temporary restraining order will not disserve the public interest because it is simply enforcing the contract made between the parties. Enforcing a contract promotes rather than disserves the public interest. Accordingly, the fourth requirement has also been met.

## IV.   Conclusion and Temporary Restraining Order

The court, for the reasons herein stated, **determines** that Defendant and Counterclaim and Third-Party Plaintiff Al-Anwa has satisfied each of the elements necessary to obtain a temporary restraining order. Accordingly, the court **grants** Emergency Motion of Al-Anwa Aviation, Inc. a/k/a Al-Anwa Trading and Contracting Establishment, for a Temporary Restraining Order.

The court therefore **orders** that Plaintiff and Counterclaim Defendant KACC, its officers, agents, servants, employees, attorneys, and all persons acting in concert with them, are hereby **temporarily restrained** from selling or otherwise disposing of the Aircraft, Lockheed Model L1011-500, Serial Number 1247, ICAO Registration Number HZ-AB1. The court further **orders that the current sale of the Aircraft, which is scheduled for July 10, 2008, is hereby canceled**. As a temporary restraining order is to preserve the status quo, and this temporary restraining order is based upon the record as it currently exists, the determinations made by the court may change after additional facts are presented, the issues of law are further developed, and the court has had an opportunity to conduct a more thorough analysis of the legal issues presented.

Rule 65(c) of the Federal Rules of Civil Procedure provides: "No restraining order . . . shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for

the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Al-Anwa contends that no bond is necessary because it has already placed $2.34 million in an escrow account. The court agrees that $2.34 million in an escrow account is sufficient to prevent the need for a separate bond. Al-Anwa, however, is **ordered** to place $2.34 million **forthwith** in an escrow account with Aero-Space Reports, as agreed upon by the parties to fully comply with section 3.22(b) of the CCAIMA.

As this temporary restraining order is issued with notice, the ten-day requirement in Rule 65 does not apply to its duration. The court, however, will contact the parties as to the need and date for a hearing on the preliminary injunction, and **defers** ruling on the preliminary injunction at this time.

**It is so ordered** this 9th day of July, 2008.

Sam A. Lindsay
United States District Judge