IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KING AEROSPACE COMMERCIAL CORPORATION, INC.,** | § § § § | |
| Plaintiff/Counterclaim Defendant, | § § | Civil Action No. **3:08-CV-0999-L** |
| v. | § § | |
| **AL-ANWA AVIATION, INC., a/k/a AL-ANWA TRADING AND CONTRACTING ESTABLISHMENT**, | § § § § | |
| Defendant/Counterclaim and Third-Party Plaintiff, | § § § § | |
| v. | § § | |
| **SIMAT, HELLIESEN & EICHNER, INC., a/k/a SH&E, INC.,** | § § § § | |
| Third-Party Defendant. | § | |

## MEMORANDUM OPINION AND ORDER
## GRANTING PRELIMINARY INJUNCTION

Before the court are: (1) Emergency Motion of Al-Anwa Aviation, Inc. a/k/a Al-Anwa Trading and Contracting Establishment, for a Temporary Restraining Order and Preliminary Injunction, filed June 25, 2008; and (2) Third-Party Defendant Simat, Helliesen & Eichner, Inc. a/k/a SH&E, Inc.'s Rule 12(b)(6) [sic] Motion to Amend Escrow Amount, filed October 10, 2008. After carefully considering the motion, briefs, record, and applicable law, the court **grants** Emergency Motion of Al-Anwa Aviation, Inc. a/k/a Al-Anwa Trading and Contracting Establishment, for a Preliminary Injunction and **denies** Third-Party Defendant Simat, Helliesen & Eichner, Inc. a/k/a SH&E, Inc.'s Rule 12(b)(6) [sic] Motion to Amend Escrow Amount.

I. **Factual and Procedural Background**

Plaintiff and Counterclaim Defendant King Aerospace Commercial Corporation, Inc. ("KACC") filed its Original Petition in the 116th Judicial District Court, Dallas County, Texas on May 23, 2008. KACC brought this action against Defendant and Counterclaim and Third-Party Plaintiff Al-Anwa Aviation, Inc. a/k/a Al-Anwa Trading and Contracting Establishment ("Al-Anwa") alleging claims of breach of contract, quantum meruit, and unjust enrichment. Al-Anwa removed the case to this court on June 13, 2008, and on June 20, 2008, it filed counterclaims and a third-party complaint against KACC and Third-Party Defendant Simat, Helliesen & Eichner, Inc. a/k/a SH&E, Inc. ("SH&E"). Al-Anwa asserts claims of breach of contract, breach of the implied duty of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, negligence, gross negligence, and negligent misrepresentation against SH&E. Al-Anwa has brought claims of breach of contract, unjust enrichment, and conversion against KACC, and it seeks a declaratory judgment and injunctive relief. Al-Anwa further pleads theories of vicarious liability against KACC, including aiding and abetting and civil conspiracy with SH&E.

The dispute grows out of two contracts between KACC and Al-Anwa regarding the refurbishment of an aircraft, Lockheed Model L1011-500, Serial Number 1247, ICAO Registration Number HZ-AB1 (the "Aircraft"). Al-Anwa alleges that it began negotiating with SH&E in the summer of 2007 regarding its desire to refurbish the interior of the Aircraft and that ultimately SH&E negotiated a contract with KACC on Al-Anwa's behalf.[*]

---

[*] Al-Anwa cites extensively to its counterclaim and third-party complaint in support of the factual background section of its brief. Its counterclaim and third-party complaint is not a verified document, and thus the court does not rely on these unverified allegations in determining this motion. Much of the background involving SH&E is irrelevant to the motion because Al-Anwa seeks injunctive relief against KACC only.

Al-Anwa and KACC signed a contract dated November 15, 2007, relating to the removal of the interior of the Aircraft (the "Interior Removal Contract"). Al-Anwa agreed to pay $408,750 for services specified in the Interior Removal Contract. Al-Anwa paid the contract price to KACC. The parties signed a second contract on December 13, 2007, the Commercial Corporation Aircraft Interior Modification Agreement (the "CCAIMA"). This contract, which called for additional work on the interior of the Aircraft, had a contract price of $11,700,000. The payment schedule requires the following: 10% of the base price to be paid upon execution of the agreement; 20% of the base price to be paid on or before the date the Aircraft was delivered to KACC; 20% of the base price to be paid upon removal of the interior of the Aircraft; 10% of the base price to be paid upon completion of the gallery prep; 10% of the base price to be paid upon beginning the cabin and component reinstallation; 10% of the base price to be paid upon completion of the gallery reinstallation; 10% of the base price to be paid upon the interior reinstallation phase, and the remaining balance to be due upon the completion date. Al-Anwa paid 10% on or about December 16, 2007, and paid an additional 20% on or about January 26, 2008, after the Aircraft was delivered to KACC. Accordingly, Al-Anwa has now paid KACC $3,510,000, or 30% of the base price.

The parties hotly contest what happened next, who is to blame for various delays, and which party had the responsibility to produce certain documents. On February 11, 2008, KACC sent a letter to Al-Anwa stating that Al-Anwa was in breach of the CCAIMA for failure to provide certain documents to KACC and demanding payment of $42,750 per day for each day it did not receive the documents. On March 5, 2008, KACC sent an invoice to Al-Anwa requesting payment of the third installment of the contract, or 20% of the base price for completion of removal of the aircraft interior.

On May 7, 2008, KACC notified Al-Anwa that it had failed to deliver 20% of the base price to KACC, demanding payment within five days and stating that KACC had a lien on the Aircraft and intended to foreclose. On May 30, 2008, KACC notified Al-Anwa that it claimed a lien against the Aircraft pursuant to an Oklahoma statute and posted a notice that a public sale of the Aircraft would be held June 10, 2008. On June 2, 2008, KACC re-noticed its lien and reset the sale for June 16, 2008. A few days later, KACC withdrew the Oklahoma lien and notified Al-Anwa that it claimed a lien against the Aircraft under Texas law. On June 20, 2008, KACC told Al-Anwa it was going to foreclose on the lien and set a public sale for July 10, 2008.

Al-Anwa notified KACC on June 2, 2008 that it invoked section 3.22(b) of the CCAIMA. Al-Anwa demanded the return of the Aircraft and stated that it was prepared to deposit the disputed 20% of the base price into an agreed-upon escrow account. On June 18, 2008, Al-Anwa notified KACC that the 20% (or $2.34 million) had been deposited into an escrow account at the law firm of Husch Blackwell Sanders LLP. In response, KACC stated that Al-Anwa owed it $12,691,795.32, or the entire balance due of the CCAIMA, consequential damages beginning February 14, 2008, interest, and attorney's fees. KACC stated that it would not return the Aircraft until this amount was placed in escrow, as well as an additional $149,800 it contends is the cost of delivering parts of the Aircraft to Al-Anwa. KACC also demanded that Al-Anwa place this money in an escrow account at Aero-Space Reports.

On June 25, 2008, Al-Anwa filed this motion for a temporary restraining order and preliminary injunction. It asked the court to enjoin KACC from selling the Aircraft at the July 10, 2008 public sale and to order KACC to return the Aircraft to Al-Anwa. The court expedited briefing on Al-Anwa's motion, and on July 9, 2008, it granted an order temporarily restraining KACC from

selling the Aircraft, canceling the July 19, 2008 sale, and ordering Al-Anwa to place $2.34 million in an escrow account. The court later allowed Al-Anwa to deposit the $2.34 million into the registry of the court. After permitting additional briefing on the request for a preliminary injunction, the court held a hearing on August 19, 2008.

## II.     Legal Standard

There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction. To prevail, a plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline,* 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

## III.    Analysis

The court must evaluate each of the four elements necessary for a preliminary injunction in considering Al-Anwa's request. The court considers arguments made by the parties in their initial briefing and the supplemental briefs filed before the preliminary injunction hearing.

In its supplemental brief, KACC urges the court to reconsider its earlier decision and deny the request for a preliminary injunction. KACC argues that under the CCAIMA, before Al-Anwa is entitled to invoke the procedure in section 3.22(b), it must prove that it is not in breach of the agreement as a whole. Accordingly, KACC seeks to present evidence to the court demonstrating Al-Anwa's breach. KACC also now argues that the "Disputed Sums" in this case are more than $4.5 million and that in order for KACC to agree to return the Aircraft, Al-Anwa must deposit an approximately $2.2 million more into the court's registry.

In its supplemental brief, Al-Anwa argues that the court was correct when it granted a temporary restraining order, and asks the court to enter a preliminary injunction and to order the return of the Aircraft. Al-Anwa contends that KACC's interpretation of the CCAIMA requiring a finding that Al-Anwa was in breach violates the meaning of section 3.22(b) and that KACC's new position on the amount of "Disputed Sums" is flawed.

### A. Likelihood of Success on the Merits

#### 1. Parties' Contentions

Al-Anwa argues primarily that it is likely to succeed on the merits on its counterclaim against KACC for breach of contract, but also notes that it is likely to succeed on its claims for unjust enrichment, conversion, aiding and abetting, and civil conspiracy. It contends that pursuant to both section 3.22(b) of the CCAIMA and Texas law, KACC must return the Aircraft to Al-Anwa because it has placed sufficient funds in an escrow account. Al-Anwa also argues that the Texas lien KACC placed on the Aircraft is invalid.

Al-Anwa contends that section 3.22(b) has been fully complied with because it has placed 20% of the base price, or $2.34 million, into the court's registry. It argues that the lien on the

Aircraft, made pursuant to Texas Property Code § 70.301 *et seq.*, states that the amount due is "in excess of $2,340,000.00," and describes as extortion KACC's demand that Al-Anwa place additional funds in escrow to secure return of the Aircraft.

KACC does not dispute the procedure available in section 3.22(b), but argues that Al-Anwa has failed to comply with it by its refusal to place additional funds in escrow. In its initial briefing, KACC argued that the phrase "Disputed Sums" includes all amounts in dispute between the parties, and should include not just the $2.34 million it demanded and set forth in the lien, but the entire balance due of the CCAIMA, consequential damages in the amount of $42,750 per day since February 14, 2008, interest on the actual and consequential damages, and attorney's fees. In its supplemental memorandum, KACC argues that the "Disputed Sums" should be its damages, or $8,087,348.30. KACC acknowledges that this amount can be reduced by $3,510,000, the amount KACC has already been paid by Al-Anwa, and $2,340,000, the amount of money Al-Anwa deposited with the registry of the court. Accordingly, KACC argues that section 3.22(b) is satisfied only if Al-Anwa deposits an additional $2,237,348.30 in the registry of the court. KACC apparently has abandoned its argument that the term "Disputed Sums" also includes daily consequential damages, interest, and attorney's fees. KACC also argues in its supplemental memorandum that before Al-Anwa may invoke section 3.22(b), it must prove that it is not in breach.

In reply, Al-Anwa argues that KACC's interpretation of "Disputed Sums" is incorrect and that section 3.22(b) must be read with section 3.4 of the CCAIMA. Al-Anwa argues that the two sections read together limit KACC to receiving payment for completed work and only allow additional damages, including costs and attorney's fees, if the Aircraft is actually sold pursuant to

foreclosure of a mechanic's lien. It also notes that KACC has already received 30% of the base price of the CCAIMA despite the fact that no work on the Aircraft has been completed.

At the preliminary injunction hearing, the court allowed the parties to argue the motion and KACC to present the testimony of two witnesses: Donald Lee Salisbury, KACC's director of corporate aircraft services, and Harold Keith Weaver, KACC's vice-president for finance. Al-Anwa objected to the testimony and argued that this evidence was unnecessary because the court must determine what the terms of the contract mean as a matter of law. Al-Anwa did not present any testimony.

### 2. Analysis

Section 3.22(b) of the CCAIMA provides:

> If KACC is the party allegedly breaching, Owner [Al-Anwa] may cause KACC, upon the written demand of Owner to return promptly, and KACC shall return promptly, the Aircraft, **including without limitation any parts, systems, accessories or equipment (including all records, maintenance manuals, logbooks or other documentation) associated with the Aircraft**, as Owner may so demand, to Owner or Owner's Representative, at the Facility as long as all funds owed to KACC have been paid. If Owner disputes that any such sums are owed to KACC, KACC shall not be required to relinquish possession of the Aircraft until full payment for all undisputed Work is paid to KACC by Owner and a sum of money equal to the sums disputed by Owner ("Disputed Sums") are deposited into escrow as described below ("Dispute Fund").
>
> **Such escrow arrangement will (i) not permit or require the release of funds to KACC or return any funds to Owner unless and until the disputes are finally settled or tried to a final decision in a court of law. The escrow agent shall be a national bank's trust department or an independent and reputable aviation escrow service to which the parties agree in writing. Owner will fund the escrow with the Dispute Fund upon negotiation in good faith of an escrow agreement among the parties and an escrow agent. The parties shall use diligent good faith efforts to resolve all disputes, if any, on or before the funds**

> are escrowed. The parties shall equally divide the cost of the escrow agent and escrow as part of any settlement. Provided that Section 3.22(b) is complied with, KACC agrees to waive and relinquish whatever rights it has, at law or otherwise, to assert any special, laborers', workmen's, mechanics', materialmen's, artisans, or any other lien against the Aircraft or any parts, systems, accessories or equipment (including an[y] records, maintenance manuals, logbooks or other documentation) associated with the Aircraft for any part of the Work performed or any work performed pursuant to an A[dditional] W[ork] R[equest].

CCAIMA § 3.22(b) (emphasis in original). Section 3.4(a) provides:

> Mechanics' Liens: KACC shall not be required to relinquish possession of the Aircraft until full payment for all Work is received by KACC unless a dispute fund is established pursuant to Section 3.22(b) below. Subject to section 3.22(b) below, KACC shall have a mechanic's lien on the Aircraft which may be foreclosed upon if Owner fails to pay for all Work or other services rendered to or for it by KACC. Additionally, if provided by applicable law, KACC shall have the right to sell the Aircraft at a public or private sale and recover from such sale all sums owed KACC and any and all costs associated with such sale including KACC's attorney's fees and other collection costs and expenses.

CCAIMA § 3.4(a). The court has reviewed the CCAIMA and considered the parties' arguments. It determines that the evidence presented at the preliminary injunction hearing need not be considered because the issue before the court is one of contract interpretation. Accordingly, it **sustains** Al-Anwa's objections to KACC's evidence presented at the preliminary injunction hearing.

### a. Contractual Obligations

KACC argues that Al-Anwa cannot invoke section 3.22(b) because it has breached the CCAIMA. It interprets section 3.22(b) as requiring, before any action can be taken pursuant to the section, the following: "(1) [Al-Anwa] must be found to be not in breach, (2) KACC must be found to be in breach, and (3) [Al-Anwa] must have declared the CCAIMA in default by written notice to

KACC[; and] (4) . . . KACC must not have cured the default." Pl.'s Supp. Memo. 3. KACC's argument relies upon language in the preamble to section 3.22, which states:

> <u>Remedies</u>. Upon occurrence of any Event of Default and at any time thereafter so long as the same shall be continuing, the non-breaching party may, at its option, declare this Agreement to be in default by a written notice to the breaching party, and at any time thereafter, so long as the breaching party shall not have remedied all outstanding Events of Default (if permitted to do so by this Agreement), the non-breaching party may do one or more of the following . . . .

CCAIMA § 3.22. The section then states that a party may: (a) terminate the contract; (b) if KACC is the party allegedly breaching, Al-Anwa may demand the return of the Aircraft under the terms of section 3.22(b); (c) "[p]roceed by appropriate court action;" or (d) "[e]xercise any other right or remedy which may be available to it under applicable law." *Id*.

Al-Anwa responds that KACC's interpretation of this provision would require it to seek and obtain a jury or court determination that Al-Anwa is not in breach and that KACC is in breach before it would be entitled to demand the return of the Aircraft. It argues that this interpretation is in direct conflict with the rationale behind section (b), which is to provide an immediate return of the Aircraft while providing security to KACC for the work that it has completed.

The court rejects KACC's interpretation of section 3.22 insofar as it would require a finding of breach before Al-Anwa is entitled to the return of the Aircraft. Reading the section as a whole, the court determines that section (b) provides a provision for the immediate return of the Aircraft upon KACC's *alleged* breach and that also provides for KACC's protection by requiring the escrow of Disputed Sums. KACC's interpretation would make superfluous both the "allegedly breaching" language in section (b) and the need for the escrow of disputed funds. According to the contract, once funds are escrowed, no release of the funds is permitted "until the disputes are finally settled

or tried to a final decision in a court of law." Accordingly, the court rejects KACC's interpretation of the CCAIMA that would require Al-Anwa to prove that is not in breach before it can invoke section 3.22(b).

### b. Disputed Sums

The court also has considered the parties' arguments regarding what the term "Disputed Sums" means and whether Al-Anwa must escrow additional funds before KACC must return the Aircraft. It concludes that Al-Anwa has complied with section 3.22(b) and is likely to succeed on its breach of contract claim insofar as it argues that KACC is required to return the Aircraft. Reading sections 3.4(a) and 3.22(b) of the CCAIMA together, the court determines that KACC's interpretation of the term "Disputed Sums" is incorrect. The amount included in the lien and the invoices sent to Al-Anwa prior to its invocation of section 3.22(b) was 20% of the base price, or $2.34 million, the amount Al-Anwa has already placed in escrow. KACC did not seek the additional $10 million until after Al-Anwa demanded the return of the Aircraft. KACC has also failed to point to any evidence or specific provision of the CCAIMA that would require Al-Anwa to pay the balance due on the contract or all of KACC's alleged damages.

The court concludes that the reasonable interpretation of the CCAIMA requires Al-Anwa only to place $2.34 million in escrow, the amount listed on the mechanic's lien filed by KACC, and the amount included in KACC's May 7, 2008 demand letter to Al-Anwa. The additional funds sought by KACC are not required by the CCAIMA and appear to be an attempt by KACC to force the sale of the Aircraft.

As Al-Anwa has complied with section 3.22(b) of the CCAIMA, the court does not reach the arguments regarding the validity of the statutory lien because KACC has waived its right to pursue such a lien. The CCAIMA states:

> Provided that Section 3.22(b) is complied with, KACC agrees to waive and relinquish whatever rights it has, at law or otherwise, to assert any special, laborers', workmen's, mechanics', materialmen's, artisans, or any other lien against the Aircraft . . . for any part of the Work performed or any work performed pursuant to an A[dditional] W[ork] R[equest].

CCAIMA § 3.22(b). Because the court has determined that Al-Anwa has complied with section 3.22(b), KACC is not entitled to any lien against the Aircraft and the statutory lien is invalid. Accordingly, the court determines that Al-Anwa has established the substantial likelihood of success on its breach of contract claim.

### B. Threat of Immediate and Irreparable Harm

Al-Anwa argues that the sale of the Aircraft presents an immediate and irreparable harm to it because the Aircraft has special sentimental value to its principal, only 250 of the model were produced and only fifteen are still in active use, and the Aircraft has already had its interior removed and is ready for refurbishment. KACC states in passing that Al-Anwa will not be harmed because it "can easily obtain a comparable aircraft." KACC Resp. 11 ¶ 29.

At the preliminary injunction hearing, KACC presented conflicting testimony regarding the uniqueness of the Aircraft. Salisbury testified that there is nothing unique about the Aircraft, although Al-Anwa pointed out that he did not know that it was built specifically for King Hussein. Weaver, however, testified that the Aircraft owned by Al-Anwa was unique because of its "VIP-type interior."

The court determines that Al-Anwa has demonstrated immediate and irreparable harm if KACC is allowed to sell the Aircraft. It has provided evidence supporting its claim that this particular plane is irreplaceable both because of its sentimental value and the scarcity of similar planes. *See Consolidated Restaurant Ops., Inc. v. National Processing Co.*, 2002 WL 1432469, *6 (N.D. Tex. Jun. 28, 2002) (citing *Our Company, Inc. v. Eagle Snacks, Inc.*, 812 F. Supp. 6, 7 (D. Me. 1993) ("Where a party seeking prejudgment injunctive relief asserts claims that, in essence, are capable of being addressed by an award of monetary damages, it cannot be said that there is irreparable injury unless it is shown that there is some unique category of loss not capable of being addressed on existing legal theories by an award of damages.")); *see also Deemer v. Bontz*, Civil Action No. 4:07-CV-0380-Y (June 29, 2007). Accordingly, the second required element for a preliminary injunction has been satisfied.

### C. Harm to Al-Anwa versus Harm to KACC

The court also determines that greater injury will result from denying the preliminary injunction than from granting it. *Clark*, 812 F.2d at 993. Al-Anwa argues that the loss of the Aircraft will be an irreparable harm to it but that KACC will be protected because $2.34 million has been placed in escrow. KACC responds that the threatened injury to Al-Anwa "outweighs any damages KACC might be caused by the injunction only if the proper escrow amount and account are used." KACC Resp. 11 ¶ 29. The court has already concluded that Al-Anwa has complied with section 3.22(b) by placing $2.34 million in the court's registry. Although KACC argues that its damages are greater than this amount, it has not demonstrated that under the CCAIMA it is entitled to this amount pursuant to section 3.22(b). Accordingly, the court determines that the third requirement has also been met.

### D. The Public Interest

Finally, the court determines that granting a preliminary injunction does not disserve the public interest. Al-Anwa argues that the burden is on KACC to show than an injunction would harm the public and that the public interest would be served by preventing the sale and conversion of the Aircraft by KACC. KACC does not address the public interest prerequisite.

The burden of persuasion on this element lies with Al-Anwa, not KACC. *PCI Transp., Inc. v. Fort Worth & Western R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (quoting *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 195 (5th Cir. 2003)). The court, however, determines that granting a preliminary injunction will not disserve the public interest because it is simply enforcing the contract made between the parties. Enforcing a contract promotes rather than disserves the public interest. Accordingly, the fourth requirement has also been met.

### IV. SH&E's Motion to Amend Escrow Amount

While the motion for preliminary injunction was pending, Third-Party Defendant SH&E asked the court to add $527,104.05 to any amount it orders Al-Anwa to place in escrow. SH&E contends that on April 25, 2008, it filed a lien in this amount in Carter County, Oklahoma on the Aircraft. SH&E makes its request "[i]n the interest of judicial economy and to avoid the unnecessary time and expense of threatening a foreclosure" on this Oklahoma lien. Mot. ¶ 4. SH&E cites no case law, statute, or rule of civil procedure in support of its request.

The court, in granting a temporary restraining order and now a preliminary injunction, considered the CCAIMA, an agreement between KACC and Al-Anwa, to which SH&E is not a party. The amount the court required that Al-Anwa place in escrow was based upon section 3.22(b) of the CCAIMA. SH&E has made no showing that it is entitled to a bond or escrow amount, or cited

to any contractual agreement that might allow the court to grant its request. Accordingly, the court **denies** Third-Party Defendant Simat, Helliesen & Eichner, Inc. a/k/a SH&E, Inc.'s Rule 12(b)(6) [sic] Motion to Amend Escrow Amount.

## V.     Conclusion and Preliminary Injunction

The court, for the reasons herein stated, **determines** that Defendant and Counterclaim and Third-Party Plaintiff Al-Anwa has satisfied each of the elements necessary to obtain a preliminary injunction. Accordingly, the court **grants** Emergency Motion of Al-Anwa Aviation, Inc. a/k/a Al-Anwa Trading and Contracting Establishment, for a Preliminary Injunction. The court also **denies** Third-Party Defendant Simat, Helliesen & Eichner, Inc. a/k/a SH&E, Inc.'s Rule 12(b)(6) [sic] Motion to Amend Escrow Amount.

The court therefore **orders** that Plaintiff and Counterclaim Defendant KACC, its officers, agents, servants, employees, attorneys, and all persons acting in concert with them, are hereby **preliminarily enjoined and prohibited** from selling or otherwise disposing of the Aircraft, Lockheed Model L1011-500, Serial Number 1247, ICAO Registration Number HZ-AB1, currently in KACC's custody, control, or possession; or any other property of Al-Anwa currently in KACC's custody, control, or possession. Moreover, the court **orders** KACC to return the Aircraft to Al-Anwa pursuant to section 3.22(b) of the CCAIMA. The court **orders** the parties to **confer** regarding the simplest and most cost-efficient way to prepare and return the Aircraft to Al-Anwa.

Rule 65(c) of the Federal Rules of Civil Procedure provides: "The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." Fed. R. Civ. P. 65(c). Al-Anwa contends that no bond is necessary because it has already

placed $2.34 million in the court's registry. The court agrees that $2.34 million in the court's registry is sufficient to prevent the need for a separate bond. Accordingly, no additional security is required.

**It is so ordered** this 15th day of October, 2008.

                                            Sam A. Lindsay
                                            United States District Judge