IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KING AEROSPACE COMMERCIAL CORPORATION, INC.,** | § § § | |
| Plaintiff/Counterclaim Defendant, | § § | |
| v. | § § | Civil Action No. **3:08-CV-0999-L** |
| **AL-ANWA AVIATION, INC., a/k/a AL-ANWA TRADING AND CONTRACTING ESTABLISHMENT**, | § § § § | |
| Defendant/Counterclaim and Third-Party Plaintiff/Counterclaim Defendant, | § § § § | |
| v. | § § | |
| **SIMAT, HELLIESEN & EICHNER, INC., a/k/a SH&E, INC.,** | § § § | |
| Third-Party Defendant/Counterclaim Plaintiff. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Third-Party Defendant/Counterclaim Plaintiff Simat, Helliensen & Eichner, Inc., a/k/a SH&E, Inc.'s Motion for Summary Judgment, filed July 8, 2010; and (2) the Motion of Defendant Al-Anwa Aviation, Inc. for Partial Summary Judgment on Plaintiff's Promissory Estoppel Claim, filed July 8, 2010. After considering the motions, briefs, record, and applicable law, the court **grants in part** and **denies in part** Third-Party Defendant/Counterclaim Plaintiff Simat, Helliensen & Eichner, Inc., a/k/a SH&E, Inc.'s Motion for Summary Judgment; and **grants** the Motion of Defendant Al-Anwa Aviation, Inc. for Partial Summary Judgment on Plaintiff's Promissory Estoppel Claim.

## I. Factual and Procedural Background

Plaintiff and Counterclaim Defendant King Aerospace Commercial Corporation, Inc. ("KACC") filed its Original Petition in the 116th Judicial District Court, Dallas County, Texas, on May 23, 2008. KACC brought this action against Defendant, Counterclaim and Third-Party Plaintiff, and Counterclaim Defendant Al-Anwa Aviation, Inc. a/k/a Al-Anwa Trading and Contracting Establishment ("Al-Anwa") alleging claims of breach of contract, quantum meruit, and unjust enrichment.

Al-Anwa removed the case to this court on June 13, 2008, and on June 20, 2008, it filed counterclaims and a third-party complaint against KACC and Third-Party Defendant Simat, Helliesen & Eichner, Inc. a/k/a SH&E, Inc. ("SH&E"). Al-Anwa asserts claims of breach of contract, breach of the implied duty of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, negligence, gross negligence, negligent misrepresentation, and civil conspiracy against SH&E. Al-Anwa has brought claims of breach of contract, unjust enrichment, conversion, aiding and abetting, and civil conspiracy against KACC, and it seeks a declaratory judgment and injunctive relief. SH&E asserts a counterclaim against Al-Anwa for breach of contract. KACC amended its complaint on March 26, 2009, and now asserts only claims of breach of contract and promissory estoppel against Al-Anwa.

On January 21, 2010, the court ruled on a motion for summary judgment filed by KACC. The court dismissed with prejudice Al-Anwa's counterclaims for unjust enrichment, declaratory judgment, and civil conspiracy founded on gross negligence and Al-Anwa's affirmative defenses of laches, unclean hands, unjust enrichment, and limited contractual remedies with respect to KACC's breach of contract claim. The motions now pending relate to KACC's promissory estoppel

claim against Al-Anwa, SH&E's breach of contract claim against Al-Anwa, and Al-Anwa's third-party claims against SH&E. The court will set forth the facts with respect to each motion, as necessary, below.

## II. Legal Standard – Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v.*

*Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    Al-Anwa's Motion for Partial Summary Judgment

KACC amended its complaint on March 26, 2009, and it asserts two claims against Al-Anwa, breach of contract and promissory estoppel. When the court granted KACC leave to amend, it stated: "KACC is entitled to plead alternative theories, even if they are inconsistent. While KACC will be unable to prevail on both contract and promissory estoppel theories, its proposed amended complaint is not futile." Mem. Op. and Order (Mar. 25, 2009) 13.

Al-Anwa now moves for summary judgment on the promissory estoppel claim, contending that there is a valid contract between it and KACC, the Commercial Corporation Aircraft Interior

Modification Agreement (the "CCAIMA"), that governs the damages KACC pleads in its promissory estoppel claim. It argues that a promissory estoppel claim is valid only in the absence of a valid, enforceable contract.

In response, KACC argues that Al-Anwa's motion is moot. It states that it asserted the promissory estoppel claim because "it was not known at the time whether Al-Anwa would dispute the validity and enforceability of the two contracts" between the parties. Pl.'s Resp. 1. It contends that the issue is now moot because Al-Anwa has conceded the validity of the two contracts. KACC attaches a proposed stipulation dismissing the claim, to which Al-Anwa would not agree. Al-Anwa replies that the issue is not moot because KACC still has a pending claim for promissory estoppel. Al-Anwa admits in its motion for summary judgment that there is an express contract between the parties that covers the subject matter of KACC's promissory estoppel claim.

In light of the parties' briefing, the court determines that there is no genuine issue of material fact with respect to KACC's promissory estoppel claim, which it proposed dismissing pursuant to a joint stipulation. As the claim is pending, Al-Anwa is entitled to judgment as a matter of law on this claim. Accordingly, the court will grant Al-Anwa's motion and dismiss KACC's claim of promissory estoppel with prejudice.

## IV.  SH&E's Motion for Summary Judgment

SH&E moves for summary judgment on its claim for breach of contract against Al-Anwa and for Al-Anwa's claims of breach of contract, breach of fiduciary duty, negligence, gross negligence, negligent misrepresentation, and civil conspiracy against it. SH&E also contends that Al-Anwa's damages are precluded entirely or limited by the parties' contractual agreement and New

York law.  Al-Anwa opposes the motion in its entirety and contends that genuine issues of material fact prevent summary judgment on all these claims.

### A.      Undisputed Facts

There are few undisputed facts, and both parties have set forth extensive evidence and statements of fact.  The parties agree that Al-Anwa retained SH&E for consulting services relating to aircraft owned by His Excellency Sheik Abdul Aziz Bin Ibrahim Al Ibrahim (the "Sheik").  This case concerns services relating to a Lockheed L-1011-500 aircraft (the "Aircraft"), but the Sheik also owns two other planes, a 757 and a second L-1011.

The parties first met in July 2007 in New York.  At that time, the Aircraft was grounded in Marseilles, France, after a bird strike that damaged one of the engines.

The parties entered into two contracts.  SH&E and Al-Anwa disagree as to the legal effect of these two contracts, including whether they should be construed together or are separate documents.  The court will set forth the undisputed facts here and consider the parties' legal arguments below.

The first contract is a letter dated July 12, 2007.  SH&E terms this agreement a "General Terms Agreement" ("GTA"); Al-Anwa calls it the "August Contract" because it was executed by Al-Anwa on August 29, 2007.  After the July meeting, SH&E sent two documents to the Al-Anwa, the July 12, 2007 letter, which was signed on behalf of SH&E by its Vice President, Gary Weissel ("Weissel").  This letter was accepted and agreed to by Al-Anwa's representative, Samah al-Metairi, on August 29, 2007 (hereinafter, the "August Contract").  SH&E also sent a document titled "Independent Expert Advice to Al-Anwa," which was also dated July 12, 2007. SH&E refers to this document as the "Proposal," while Al-Anwa calls this document "Attachment A."  This document

was signed by Weissel, but it was never executed by Al-Anwa (hereinafter, "Attachment A"). Attachment A includes four tasks to be performed by SH&E with respect to the three aircrafts; only one task related to the Aircraft – the review and comparison of D-check proposals for the Aircraft. A "D-check" is a regular maintenance for aircraft. Attachment A set forth the four tasks as well as the professional fee for each.

The second contract is a letter titled "Aircraft Technical Management – Statement of work (SOW)" that is dated October 8, 2007. SH&E calls this letter the "Statement of Work," while Al-Anwa refers to it as the "October Contract." This letter was executed by Al-Anwa on October 11, 2007 (hereinafter, the "Statement of Work"). This document lists seven tasks to be completed by SH&E, five of which relate to the Aircraft.

During the parties' relationship, Al-Anwa signed three contracts with vendors relating to the Aircraft. For the D-Check, Al-Anwa signed a General Terms Agreement (the "Victorville Contract") with Victorville Aerospace Limited ("VAL") in Victorville, California, on November 13, 2007. The next contract signed by Al-Anwa was the November 15, 2007 Commercial Corporation Aircraft Interior Modification Agreement (the "Interior Removal Contract") with Plaintiff KACC. This contract had a base price of $408,750 and related to the removal of the existing interior of the Aircraft. Finally, Al-Anwa signed the CCAIMA with KACC, which was dated December 13, 2007, and related to the refurbishment of the interior of the Aircraft.

The Aircraft's damaged engine was replaced on January 8, 2008, after two trips to Marseilles by teams from VAL. It then arrived at KACC in Oklahoma on January 15, 2008. Al-Anwa terminated SH&E's services on or about February 28, 2008. KACC removed the Aircraft from its hangar on May 8, 2008, and this litigation ensued in state court on May 23, 2008.

**B.      Legal Effect of the August Contract and the Statement of Work**

Before reaching the parties' arguments about the specific claims, the court considers SH&E's contention that the August Contract and the Statement of Work should be read together as one contract. It argues that these agreements were executed at substantially the same time, involve the same parties, and have complementary terms that should apply to the full agreement. It argues that the August Contract sets forth the general terms of the parties' relationship, while the Statement of Work contains the specific tasks to be completed.

Al-Anwa disagrees and contends that the two contracts are separate. It notes that the Statement of Work does not refer to the August Contract and argues that the plain language of the agreements demonstrates that they are separate contracts. It contends that the limitations on liability that are included in the August Contract do not apply to the Statement of Work. It argues that Attachment A is part of the August Contract.

Under certain circumstances, multiple writings can be considered to be one agreement under New York[*] law:

> Whether multiple writings should be construed as one agreement depends upon the intent of the parties. Generally, separate writings are construed as one agreement if they relate to the same subject matter and are executed simultaneously. Even if the writings are executed at different times, however, Williston tells us that contracts should be interpreted together if the parties assented to all the promises as a whole, so that there would have been no bargain whatever if any promise or set of promises had been stricken. . . . [I]n the absence of anything to indicate a contrary intention, where several instruments constitute part of the same transaction, they must be interpreted together.

---

[*]The court previously determined that New York law applies to Al-Anwa's claims. Mem. Op. and Order (Mar. 25, 2009) 7.

*Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 52-53 (2d Cir. 1993) (citations and quotations omitted). Because this determination turns on the intent of the parties, it is usually "an issue which is typically a question of fact for the jury. But if the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the court." *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 89 (2d Cir. 2005) (citations omitted), *cert. denied*, 548 U.S. 904 (2006). New York law also provides that for one contract to incorporate another, it must be "referred to and described in the instrument that the paper may be *identified beyond all reasonable doubt*." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (quotation and citation omitted; original emphasis).

The August Contract states that "SH&E will provide [Al-Anwa] with the services specified in [Attachment A.] SH&E will be pleased to consider and may perform additional or alternative services at [Al-Anwa's] written request, but only if and to the extent SH&E agrees in writing to do so." SH&E App. 33. The agreement goes on to define the nature of the relationship between the parties, provides compensation and billing terms, imposes confidentiality requirements upon SH&E, sets forth the governing law, and includes provisions for indemnity and waivers of liability. Attachment A, which set forth four tasks to be completed and their fees, was never executed by Al-Anwa.

The four tasks in Attachment A are:

- Evaluation of engine overhaul invoices on two JT8D engines
- Evaluation of C check package invoices on one 727-200
- Evaluation of D-check proposals on [the Aircraft]
- Completion of a full appraisal of one L1011-500 to determine current market value.

*Id.* at 15. The Statement of Work sets forth seven tasks. These are:

- D-Check vendor sourcing for [the Aircraft]
- D-Check on-site management for [the Aircraft]
- Evaluation, design and cost estimate development for [the Aircraft]
- Complete vendor sourcing for [the Aircraft refurbishment]. Includes completion center, materials, engineering, seats, JFE, Satcom, LiveTV, etc. sourcing
- On-site management for [the Aircraft refurbishment]
- Re-activation cost analysis for one (1) L1011 aircraft (VP-CGF)
- Re-activation and ferry flight management of one (1) L1011 aircraft (VP-CGF)

*Id*. at 39. The Statement of Work includes hourly fees for SH&E's employees and fee estimates for each of the seven tasks. It does not include any other general contractual terms.

The court determines that the August Contract and the Statement of Work should be considered one contract pursuant to *Commander Oil*. The incorporation cases cited by Al-Anwa are inapposite because they do not refer to documents between the same parties. *See Bybyk*, 81 F.3d at 1201 (considering whether National Association of Securities Dealers Code was incorporated into a contract); *Chiacchia v. National Westminster Bank USA*, 124 A.D.2d 626, 627-28 (N.Y. App. Div. 1986) (considering whether bank's rules and regulations were incorporated into a safety deposit box rental agreement); *Cornhusker Farms, Inc. v. Hunts Point Coop. Market, Inc.*, 2 A.D.3d 201, 204 (N.Y. App. Div. 2003) (considering whether architectural plans were incorporated into an agreement) .

The two contracts here relate to the same subject matter and are between the same parties; they were not executed simultaneously, but they were executed within a few months of each other and during a period where the evidence establishes the parties continued to negotiate. They do not contain conflicting terms. The August Contract specifically contemplates further agreements between the parties, and the Statement of Work does not contain any general contract terms. That

they were not executed simultaneously does not preclude the court from finding that they should be construed together.  *TVT Records*, 412 F.3d at 89.

Although this determination must consider the intent of the parties, the court determines that the evidence relating to these two agreements shows that the parties did intend the August Contract to act as a general terms agreement governing the parties' later specific agreements.  For example, Weissel referred to the August Contract as the "GTA" when he sent it to Al-Anwa, and Samah Shatri, on behalf of Al-Anwa, also termed it the "GTA" when he returned the signed copy of the August Contract to SH&E.  SH&E App. 12, 32.   Weissel also referred to the document as "our standard GTA" in a memorandum to the Sheik on July 13, 2007, and stated that it "will cover not only this project but any future work or support we can provide you."  *Id.* at 31.  Al-Anwa's response points to a reference by Weissel in an e-mail that SH&E and Al-Anwa had entered into "two contracts (dated July 12, 2007 for the original workscope and October 8, 2007 for the increased workscope)."  Al-Anwa App. 67.  It otherwise relies upon the language in the agreements.  The court has considered all the evidence and the language of the two documents.  It is undisputed that there are two documents; therefore, Weissel's reference to "two contracts" is unavailing in light of the statements made when the August Contract was signed.  The parties both called the August Contract a general terms agreement, and SH&E stated unambiguously that it would cover future work for Al-Anwa.  Although Al-Anwa argues that the August Contract applied to and included Attachment A, this document, which was executed by SH&E, was never signed by Al-Anwa.  Moreover, even if Attachment A was part of the August Contract, the general terms of the August Contract anticipate further written agreements and apply to later agreements, including the Statement of Work.

The court therefore determines that there is no genuine issue of material fact regarding whether the parties intended the August Contract and the Statement of Work to be construed as one contract. The contracts and the evidence of the parties' intent demonstrates that the August Contract was meant to be a general terms agreement that would govern future work orders, such as the Statement of Work signed by the parties in October. The terms of the August Contract therefore apply to the Statement of Work.

### C.    Breach of Contract Claims

In its motion for summary judgment, SH&E moves for summary judgment on its claim for breach of contract against Al-Anwa and Al-Anwa's claim for breach of contract against it. SH&E contends that it is entitled to damages because Al-Anwa has failed to pay it pursuant to the terms of the August Contract and the Statement of Work. It contends that there is evidence to support all of the elements of its breach of contract claim under New York law. According to SH&E, it provided services and invoiced Al-Anwa for $552,484.05. Al-Anwa has paid $25,380, leaving a balance of $527,104.05. SH&E contends that Al-Anwa's nonpayment is a breach of the parties' agreement and that is entitled to summary judgment on this claim. It also moves for summary judgment on Al-Anwa's cross-claim for summary judgment on this issue, arguing that there is no evidence that it breached the parties' agreement.

In response, Al-Anwa argues that SH&E has failed to identify the provisions of the Statement of Work that have been violated. It also argues that SH&E did not perform under the Statement of Work. Specifically, it contends that SH&E failed to appropriately bid for the refurbishment of the interior of the Aircraft, that it made misrepresentations regarding the urgency of signing contracts with KACC, that it did not correctly develop an appropriate D-check package,

and that it inflated its fees to pay a secret commission to the Bin Laden Group. Al-Anwa contends that these breaches justify its nonpayment of the fees invoiced by SH&E and defeat SH&E's motion for summary judgment on its breach of contract claim.

In its reply, SH&E points out factual inaccuracies that it contends that Al-Anwa makes in its response, but largely focuses its arguments on why dismissal of Al-Anwa's tort claims is appropriate. The court has carefully reviewed the parties arguments and the summary judgment evidence. Both Al-Anwa and SH&E point to evidence supporting their contentions, and there are conflicts between the parties' evidence. The court cannot make credibility determinations on a motion for summary judgment, and a jury must decide what evidence is credible. The court therefore determines that there are genuine issues of material fact with respect to which party breached first that can only be resolved by a fact finder after considering evidence at trial. Accordingly, SH&E is not entitled to judgment as a matter of law on its breach of contract claim or Al-Anwa's contract claim brought against it.

### D. Al-Anwa's Tort Claims

#### 1. Fiduciary Duty

The court first considers the parties' arguments with respect to Al-Anwa's claim of breach of fiduciary duty. SH&E argues that this claim is duplicative of Al-Anwa's breach of contract claim and should therefore be dismissed. It also argues that it owes no fiduciary duty to Al-Anwa and that there is no evidence of the breach of any such fiduciary duty.

Al-Anwa responds that SH&E held itself out as having special expertise and made representations so that Al-Anwa would trust it. Al-Anwa points to acts performed by SH&E before any contracts were signed and that were beyond the scope of their written agreements. It argues that

there are genuine issues of material fact whether the parties had a fiduciary relationship and whether such a relationship was breached.

The elements of a claim for breach of fiduciary duty under New York law are: "the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." *Kurtzman v. Bergstol*, 40 A.D.3d 588, 590 (N.Y. App. Div. 2007) (citations omitted). "A fiduciary relationship exists under New York law when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (quotation, citation, and brackets omitted). In determining whether such a relationship exists, the court may look beyond any written agreement and "examine whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge. Thus, ongoing conduct between parties may give rise to a fiduciary relationship that will be recognized by the courts." *AM Cosmetics, Inc. v. Solomon*, 67 F. Supp. 2d 312, 320 (S.D.N.Y. 1999). New York courts have held that "[w]hether a fiduciary relationship exists between parties is necessarily fact-specific to the particular case." *La Barte v. Seneca Res. Corp.*, 285 A.D.2d 974, 976 (N.Y. App. Div. 2001) (citation and quotation omitted).

As SH&E points out, however, even if a fiduciary duty exists between two parties, the cause of action must arise from breach of a duty separate and apart from the terms of the contract. *See Brooks v. Key Trust Co. Nat'l Assoc.*, 26 A.D.3d 628 (N.Y. App. Div. 2006). In *Brooks*, the plaintiff brought a claim for breach of fiduciary duty against his financial advisors, and the court noted that the defendants' role did create a fiduciary duty to Plaintiff. *Id*. at 630. The court, however, found

that dismissal of the breach of fiduciary duty claim as duplicative of a breach of contract claim was proper:

> [P]laintiff's [breach of fiduciary duty] claim is based upon the same facts and theories as his breach of contract claim and was properly dismissed as duplicative. The allegations underlying plaintiff's fiduciary duty claim – based upon defendants' self-dealing, conflict of interests, and failure to advise plaintiff and prudently manage and diversify his portfolio, and encouraging improper loans to plaintiff – are either expressly raised in plaintiff's breach of contract claim or encompassed within the contractual relationship by the requirement implicit in all contracts of fair dealings and good faith. As such, plaintiff has not set forth allegations that, *apart from the terms of the contract*, the parties created a relationship of higher trust than would arise from their contracts alone, so as to permit a cause of action for breach of a fiduciary duty independent of the contractual duties.

*Id.* (citations, quotations, and brackets omitted) (original emphasis).

The court need not decide whether or not SH&E owed Al-Anwa a fiduciary duty because it concludes that Al-Anwa has not alleged any breach of a fiduciary duty that is not encompassed within SH&E's contractual duties to it. In its pleading, Al-Anwa incorporates the prior paragraphs, including its count of breach of contract against SH&E, and states: "Each and every one of the aforementioned acts and omissions by SH&E . . . constitutes an intentional breach of SH&E's fiduciary duties to Al-Anwa . . . ." Al-Anwa Countercl. ¶ 104. The damages sought for this claim are the $3.51 million paid to KACC pursuant to the CCAIMA and "all amounts paid to SH&E pursuant to the SH&E Agreement." *Id.*

In its response to the motion for summary judgment, Al-Anwa contends that there is a genuine issue of material fact with respect to whether the parties had a fiduciary relationship and lists several examples of SH&E's alleged breach. These include: inflating fees to pay a secret commission to the Bin Laden Group; misrepresenting that a fair bidding process was undertaken to

find a completion center; concealing the fact that its own designer admitted KACC was not on the list of reputable outfitters; falsely telling Al-Anwa that execution of the Interior Removal Contract would give it time to negotiate a refurbishment contract; knowing that there was no slot for the Aircraft at KACC; pressuring Al-Anwa to sign the CCAIMA; and pressuring Al-Anwa into contracts with KACC. Al-Anwa Resp. 37-38.

The court finds that these allegations are duplicative of Al-Anwa's breach of contract claim. Every alleged breach by SH&E is similarly included in Al-Anwa's breach of contract claim, and each arises from SH&E's alleged contractual duties to Al-Anwa, including negotiating contracts for the removal and refurbishment of the Aircraft interior that are specifically included in the parties' written agreements. While Al-Anwa points to SH&E's statements about its expertise and the trust Al-Anwa should place in it, the alleged breaches of a fiduciary duty, assuming that they are proved, would be violations of the contractual agreement, not any independent duty apart from the contract. For these reasons, the court does not reach the question of whether a fiduciary duty exists and determines that there is no genuine issue of material fact as to whether the breach of fiduciary duty claim is duplicative of the breach of contract claim. SH&E is therefore entitled to judgment as a matter of law on this claim.

## 2. Other Tort Claims

Al-Anwa has also brought claims against SH&E of negligent misrepresentation, negligence, gross negligence, and conspiracy. SH&E moves for summary judgment on these claims, arguing that they are duplicative of its breach of contract claim. It contends that these claims should be dismissed pursuant to New York law because the facts and theories underlying the tort claims are the same as its breach of contract claim.

In response, Al-Anwa argues that New York law allows for tort and contract claims to grow out of the same conduct where there is a duty independent of the contract. Al-Anwa contends that the facts supporting the tort claims are not identical to those underlying its contract claim, including misrepresentations made by SH&E before the Statement of Work was executed.

The parties do not disagree as to the general rule that a tort claim that is duplicative of a contract claim should be dismissed. New York law contains a doctrine

> under which a tort cause of action generally does not lie where it is duplicative of a claim sounding in contract. However, an actionable tort may exist when the plaintiff asserts that the defendant breached a duty independent of the contract. While this duty can be considered independent of the contract even if it arises out of the relationship that the contract created, it must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.

*Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100, 112-13 (E.D.N.Y. 2009) (internal citations and quotations omitted); *see also Moustakis v. Christies, Inc.*, 68 A.D.3d 637, 637 (N.Y. App. Div. 2009). The parties do dispute whether Al-Anwa has alleged claims that are independent of its breach of contract claim. The court will consider the remaining tort claims pursuant to this standard.

SH&E contends that Al-Anwa's claims of negligence, gross negligence, negligent misrepresentation, and conspiracy should be dismissed as duplicative of its breach of contract claim. SH&E argues that for each of these claims Al-Anwa simply reiterates the same facts and that it has failed to allege claims that arose separate and apart from its contract claim.

In response, Al-Anwa argues that these tort claims can be based on the same facts underlying its contract claim. It states that the facts are not identical and that it has pointed to numerous misrepresentations made prior to the execution of the Statement of Work.

The court determines that these tort claims, like the breach of fiduciary duty claim, are duplicative of Al-Anwa's breach of contract claim and should therefore be dismissed. The claims as pleaded incorporate the facts that are the basis of the breach of contract claim. Although Al-Anwa points to misrepresentations made before the Statement of Work was signed, because the court has determined that the August Contract and the Statement of Work should be construed together, these facts are simply allegations of breaches of the parties' written agreements. These claims also rely upon an argument that SH&E and Al-Anwa had a special relationship, but the court has already determined that even if a special relationship exists, Al-Anwa has failed to allege facts that would lead to liability for some duty beyond those set forth in the parties' written agreements. Finally, the damages sought under these tort claims are the same as sought pursuant to the breach of contract claim – the money paid by Al-Anwa to SH&E and the amounts paid to KACC pursuant to the CCAIMA. The court is convinced that these claims do not raise the breach of any duty independent of the parties' written agreements and are therefore duplicative of the breach of contract claim. For these reasons, there is no genuine issue of material fact with respect to Al-Anwa's claims of negligence, gross negligence, negligent misrepresentation, and conspiracy, and SH&E is entitled to judgment as a matter of law on these claims.

### E.     Damages

The court next considers SH&E's argument that Al-Anwa's damages are limited by contract or New York law. It argues primarily that the written agreements between the parties limit SH&E's damages to the amount it received for professional services, $25,380. It also points to waivers in the August Contract that state that SH&E shall not be liable for consequential, punitive, incidental,

or speculative damages.  SH&E also contends that Al-Anwa cannot seek damages from it that stem from the contract between Al-Anwa and KACC.

Al-Anwa responds that the August Contract and the Statement of Work are separate contracts and that the limitations on liability in the August Contract do not apply to the tasks set forth in the Statement of Work.  It also argues that the limitation on liability for negligence is disfavored under New York law and should not be enforced even if applicable.  Al-Anwa also contends that it is entitled to seek damages that stem from its contract with KACC because SH&E breached numerous independent duties to it.

These arguments are largely moot in light of the court's determination that Al-Anwa's tort claims are duplicative of its breach of contract claim and should be dismissed.  The court does not address the arguments regarding whether SH&E is liable for consequential, punitive, incidental, or speculative damages because these damage claims arise from the tort claims that will be dismissed.

To the extent SH&E argues that the limitation of liability in the August Contract applies to the tasks set forth in the Statement of Work, the court agrees for the reasons set forth above in finding that the two agreements should be construed as one contract.  Accordingly, the limitation on indemnity is clear:  "In no event shall the total amount paid by the Consultant, if judged liable, for all claims or damages suffered by the Client, its stockholders and/or other third parties in connection with the Consultant's engagement *exceed the amount of professional services compensation actually received by the Consultant*."  SH&E App. 35 (emphasis added).  It is undisputed that Al-Anwa only paid SH&E $25,380.  In light of the court's determination that the August Contract and the Statement of Work should be interpreted together, this limitation also applies to Al-Anwa's claims relating to the tasks set forth in the Statement of Work.  Accordingly,

the court determines that there is no genuine issue of material fact whether Al-Anwa's damages from SH&E are limited to $25,380, and the court determines that this provision does limit SH&E's liability.

The court also determines that SH&E is not liable for Al-Anwa's damages arising from its contract with KACC. Al-Anwa concedes that it seeks these damages based upon SH&E's alleged breach of duties independent of the contract, and these claims are duplicative and will be dismissed by the court. To the extent Al-Anwa seeks these damages based on its breach of contract claim, the court agrees with SH&E that New York law prohibits such an award. *See Board of Educ. of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 28-29 (1987); *Tempforce Inc. v. Municipal Hous. Auth. of the City of Schenectady*, 222 A.D.2d 778, 780 (N.Y. App. Div. 1995).

The court determines that SH&E's liability is limited by the August Contract, which also applies to the Statement of Work, to the amount of professional fees it has received. There is no genuine issue of material fact as to the amount of those fees. Al-Anwa is not entitled to damages from SH&E stemming from its contract with KACC. Accordingly, Al-Anwa's damages against SH&E are limited to $25,380.

### F. Attorney's Fees

Finally, the court considers SH&E's argument that Al-Anwa is not entitled to recover any attorney's fees from it. It states that the pleaded basis for attorney's fees are Al-Anwa's contract with KACC and Chapter 38 of the Texas Civil Practice and Remedies Code. SH&E argues that there is no basis in contract or law for an award of attorney's fees against it. Al-Anwa does not respond to this argument.

The court determines that Al-Anwa has failed to establish any basis for an award of attorney's fees against SH&E. Therefore no genuine issue of material fact whether Al-Anwa may be awarded attorney's fees against SH&E exists, and SH&E is entitled to judgment as a matter of law on this claim.

## V.      Conclusion

For the reasons stated herein, the court **grants in part** and **denies in part** Third-Party Defendant/Counterclaim Plaintiff Simat, Helliensen & Eichner, Inc., a/k/a SH&E, Inc.'s Motion for Summary Judgment; and **grants** the Motion of Defendant Al-Anwa Aviation, Inc. for Partial Summary Judgment on Plaintiff's Promissory Estoppel Claim. The court **dismisses with prejudice** KACC's claim for promissory estoppel and Al-Anwa's claims of negligence, gross negligence, negligent misrepresentation, conspiracy, and attorney's fees against SH&E. The following claims remain for trial:  KACC's breach of contract claim against Al-Anwa; Al-Anwa's claims of breach of contract, conversion, aiding and abetting, and civil conspiracy for breach of fiduciary duty against KACC; Al-Anwa's claim of breach of contract against SH&E; and SH&E's claim of breach of contract against Al-Anwa. Any damages awarded to Al-Anwa against SH&E are limited to the amount of $25,380.

**It is so ordered** this 10th day of September, 2010.


Sam A. Lindsay
United States District Judge